| | |
|---|---|
| **DISTRICT COURT,**<br>**CITY & COUNTY OF DENVER,**<br>**COLORADO**<br><br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: 303-606-80202<br><br><br>**WADE M. CARTHON,**<br><br><br>Plaintiff,<br><br><br>vs.<br><br><br>**BALFOUR SENIOR CARE, LLC,**<br><br>a Delaware limited liability company,<br><br>dba "Balfour Senior Living,"<br><br>and aka BSL Center, Balfour at Riverfront Park, and Balfour Care,<br><br><br>Defendant. | DATE FILED: December 5, 2020 12:47 AM<br>FILING ID: 97E7A85F9136B<br>CASE NUMBER: 2020CV34139<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>▲ COURT USE ONLY ▲ |
| Attorney for:   Plaintiff<br>Name:   Dennis P. Walker<br>Address:   BOESEN LAW, LLC<br>   4100 East Mississippi Avenue<br>   19th Floor<br>   Denver, Colorado 80246<br>Phone Number: (303) 999-9999<br>E-mail:   dwalker@boesenlaw.com<br>Atty. Reg.#:   7658 | Case Number:<br><br><br>Crtrm:<br><br><br>Division: |
| **COMPLAINT** | |

Plaintiff, Wade M. Carthon, by his attorney, for his Complaint against Defendant, states:

1.   Wade M. Carthon, who is herein sometimes referred to as "Plaintiff" or "Carthon," is an individual who resides in Denver, Colorado. He has maintained his home in Colorado. When he was first employed with Defendant, Carthon then resided at

# EXHIBIT A

9500 King Way, Westminster, CO, 80031. Currently, Carthon maintains his residence at 2549 Franklin Street, Denver, CO, 80205.

2.      Defendant Balfour Senior Care, LLC, is a Delaware limited liability company. It has done and is doing business in Colorado. It has done business, filed its trade name, and has been known as "Balfour Senior Living." It has been also known as or called BSL Center, Balfour at Riverfront Park, and Balfour Care. Defendant is sometimes referred to as "Balfour Senior Living." It has its principal place of business and corporate office at 183 South Taylor Avenue, Louisville, CO, 80027, which is also the office of its registered agent, Susan Juroe.

3.      On information and belief, Defendant Balfour Senior Living has employed at various locations, directly and through its affiliates, and at times material to this action during the approximate period of August 2018 through December 2019, over 500 employees.

4.      Balfour Senior Living has used premises and operated and maintained a nursing home business in the building at 1500 Little Raven Street, Denver, Colorado, 80202. Its business there has been described, in part, as a luxury nursing home including senior living apartments, assisted living apartments, and memory care residences. As one of Balfour Senior Living's facilities, the business at that location has been referred to as Balfour at Riverfront Park. At material times, Balfour Senior Living has done, and it continues to do, business in the City & County of Denver at that location.

5.      In about August, 2018, Carthon entered in to an employment relationship with Balfour Senior Living to work full-time for Defendant at 1500 Little Raven Street, which is sometimes known as Balfour at Riverfront Park.

Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. §§ 12111(4).

7. At times relevant to this action, the Defendant was an "employer" within the meaning of 42 U.S.C. §§ 12111(5).

8. Balfour Senior Living ultimately terminated the employment of Carthon by suspending him on about 11/27/2019 and firing him on 12/6/2019.

9. At the time of his hiring, Carthon accepted employment with Balfour Senior Living to work as a cook or chef in its kitchen at Riverfront Park. Carthon had recently been working full-time as a cook or chef at a commercial restaurant before accepting the job with Defendant. His beginning pay for Balfour Senior Living was no greater than Carthon's pay at that restaurant.

10. To induce Carthon to accept the job and undertake the employment, Balfour Senior Living assured Carthon that he would have good opportunities to advance and succeed in positions of cook, chef, head chef, sous chef, and executive chef for Balfour at Riverfront Park, along with commensurate status, security, prestige, pay, and advances in earnings and position.

11. Balfour Senior Living also promised Carthon a sign-on bonus of $1,500 and a pay raise within about the first 90 days of his employment, along with further raises, bonuses, and promotions, provided Carthon would satisfactorily perform.

12. Directly and indirectly, Balfour Senior Living expressly promised Carthon to treat him honestly and fairly in his employment. Defendant assured him he could rely on Balfour Senior Living to honor a commitment it was making to him of good faith and fair dealing. Balfour Senior Living repeated its promise of good faith and fair dealing to Carthon after Carthon began and while he continued performing for the benefit of Balfour Senior Living.

13.     Carthon sought the employment with the assistance of Colorado Vocational Rehabilitation ("VR"). Carthon fairly disclosed to Balfour Senior Living before he was hired that he had a chronic condition of being visually impaired. Balfour Senior Living knew Carthon was working with the assistance of VR.

14.     That visual impairment condition did and does cause Carthon to be significantly limited in one or more major life activities, including being unable to read fine print as expected and needed in work and other major life activities. That condition constituted and continues to constitute a disability within the meaning of applicable Americans with Disabilities Act ("ADA") principles under state and federal law. That is true even if that condition can be or is ameliorated by aids or techniques.

15.     Balfour Senior Living understood and accepted Carthon and his disability and repeated its assurances to him to induce him to undertake the employment. Carthon, in turn, relied and took on responsibilities as a cook or chef for Balfour Senior Living and dedicated himself to and provided Defendant with his beneficial performance in his job.

16.     There also arose under all the circumstances an implied promise by Balfour Senior Living to treat Carthon in good faith and deal with him fairly.

17.     In reliance on Balfour Senior Living's assurances and promises and the implied promise of good faith and fair dealing, Carthon pursued the employment as agreed and did satisfactorily perform for Balfour Senior Living.

18.     Carthon could and did perform the essential functions and duties of his job for Balfour Senior Living with or without accommodation.

19.     For and in many of the tasks and responsibilities of his cooking job for Defendant, Carthon fulfilled what was required and he performed as needed. Carthon actually performed beyond some of the expectations of his employer. He showed he was able to and did run the kitchen in many respects. In that sense, he performed without added accommodation.

20.     For and as part of a job condition that was imposed by Balfour Senior Living in what it deemed were its required classes, including safety training, Carthon needed and would have readily been able to perform and succeed in that area with the reasonable accommodation of installed computer-reading visual aids, including Zoom-Text. That would be so he could effectively pursue and complete the employer's required classes.

21.     Those computer-reading visual aids were known by and available to Balfour Senior Living.

22.     Carthon requested, directly and with the assistance of VR, that Balfour Senior Living reasonably accommodate his visual impairment disability. That included by promptly supplying and making effective requisite computer-reading visual aids, including Zoom-Text. That was so Carthon could readily pursue and complete, by computer at work, the on-line classes required by Balfour Senior Living. Carthon made such requests beginning in about September, 2018. Especially in late 2018 and into 2019, he continued his requests to Balfour Senior Living. In various ways he asked his employer to accommodate him and tried to engage in reasonable interaction with his employer through at least about May 2019.

23.     Balfour Senior Living delayed, obstructed, avoided, and mishandled the provision of the needed accommodation. Balfour Senior Living delayed or failed in its responses to reasonably and promptly accommodate Carthon's disability.

24.     The requested accommodation was reasonable. It would have caused no undue hardship to Balfour Senior Living to promptly provide that to Carthon.

25.     During that time, Carthon was provided a computer laptop without an issue. The programs essential for the on-line classes could not immediately be run from his laptop computer. That was known or should have been known to his employer.

26.     Balfour Senior Living, by its inaction, neglect, unfair delay, misunderstanding, or failure, deprived Carthon of the needed accommodation with the result that Carthon could not expeditiously complete the on-line classes at work as required and demanded by his employer. Carthon ultimately did complete the classes by his diligence, including after he accepted a transfer as described below.

27.     In about late 2018, Balfour Senior Living told Carthon that it would withhold his promised raise, bonus and pending promotions until he completed classes that Balfour Senior Living deemed necessary. Ultimately, Defendant did not effectuate the raise for Carthon as a cook or pay him the promised sign-on bonus.

28.     The actions of Defendant unfairly threatened Carthon with and subjected him to the loss of earnings and advances that Carthon had relied upon and had the right to rely upon.

29.     Balfour Senior Living impeded effective efforts to facilitate the accommodation. It attempted to supply an inferior program (*e.g.*, "Magnifier" instead of "Zoom-Text"). Balfour Senior Living made it necessary for a computer program to be

installed or used in the office in the kitchen instead of a more appropriate available break room where Zoom-Text could have readily been installed. That approach frustrated Carthon. It could not be effectively pursued, including through the expected help of Carthon's known VR assistant (Paul Sandoval, who is blind), a person who was reasonably needed and prepared to help Carthon, as was known to the employer. This problem included the fact that Balfour Senior Living denied the VR assistant needed access via the kitchen office at Riverfront Park after his first two visits.

30.     Based on his reasonable needs, on about February 28, 2019 and May 15, 2019, Carthon duly filed discrimination charges with the EEOC against Balfour Senior Living for disability discrimination as above summarized. His charges were assigned Case # 541-2019-01274 and Case # 541-2019-01906, respectively. His charges are incorporated by reference. It is understood that the earlier charge essentially and in effect became merged into and with Case # 541-2019-01906.

31.     Balfour Senior Living arbitrarily and unfairly refused to accept and work with the honest and genuine concerns raised by Carthon and described in Carthon's discrimination charges. Meaningful opportunities to conciliate over or resolve those employment opportunity issues were lost as a result.

32.     The EEOC decided on about September 22, 2020, that it would not proceed with any further administrative handling of the charges, referring to Case # 541-2019-01906, and issued to Carthon its Notice of Right to Sue over the charges.

33.     This action has been filed by Carthon within 90 days of the receipt by Carthon of the EEOC's Notice of Right to Sue. This action is timely.

34.     Despite Carthon's requests and need for accommodation, and the duty of Balfour Senior Living to effectively and in good faith engage with Carthon in the

interactive process, Balfour Senior Living failed, refused, obstructed, or neglected
its duties to effectively and expeditiously provide Carthon with the reasonably
needed and available accommodation of his disability.

35.     Carthon suffered and has continued to suffer a loss of earnings, opportunity, status,
and expected security as a result of Balfour Senior Living's failure to accommodate
him.

36.     Balfour Senior Living went through several changes in its administration,
management and human resources. For reasons that were not explained or justified,
its newly assigned or reassigned personnel did not apparently recognize, did ignore,
or did not honor the employer's promises to Carthon to expeditiously accommodate
his disability, honor promises to give him pay raises, bonuses, and promotions as a
cook or chef (including needed recognition that he did or could run the kitchen),
and honor Balfour Senior Living's outstanding and applicable obligations of good
faith and fair dealing to Carthon.

37.     Carthon was frustrated and denied opportunities by Balfour Senior Living. He was,
as a practical matter, forced away from the kitchen and transferred by Balfour
Senior Living into a less desirable maintenance job, including janitor-type duties.
Balfour Senior Living transferred him to maintenance work without giving him
requisite physical testing and training as was customary.

38.     In about mid-2019, Carthon was compelled by Balfour Senior Living's actions to
take or accept that transfer to avoid the implicitly threatened financial harm of a
loss of all employment and earnings. Yet, he did not relinquish or agree to waive
his rights. Such maintenance work for Balfour at Riverfront Park initially paid more
per hour than the cooking or chef job. Balfour Senior Living used the device of
informing Carthon that he would only be able to get the higher pay he deserved,

expected and needed. He were to transfer out of the kitchen and work in maintenance.

39.     Balfour Senior Living dishonored its promises to Carthon and manipulated him in to working in maintenance. The employer removed him from the kitchen and deprived Carthon of better long-term opportunities, promotions, status, security, prestige, pay, and opportunities in his promising and unique career path as a cook, chef, sous chef, and executive chef. That has meant he has suffered loss of back pay and front pay and other economic losses and damages.

40.     Balfour Senior Living knew or had reason to know that Carthon's passion, talent and motivation centered on cooking and running a kitchen. The employer also made him more vulnerable to arbitrary treatment and elimination as a maintenance/janitor worker. After Carthon moved to maintenance, Balfour Senior Living subjected him to unfair scrutiny and looked for an excuse to get rid of him.

41.     Balfour intentionally or recklessly failed to accommodate Carthon concerning his disability, intentionally discriminated against Carthon because of his disability, failed to interact with Carthon in good faith about his disability, and violated the ADA by retaliating against Carthon over his charges and for engaging in the protected activity of seeking accommodation of his disability.

42.     Balfour acted against Carthon so as to unfairly relegate him to various repair and janitor work at Riverfront Park and deprive him of the opportunities he reasonably expected and was entitled to pursue in cooking.

43.     By failing to reasonably accommodate his disability and honor its promises to Carthon and by retaliating against Carthon, Balfour Senior Living proximately caused Carthon to suffer and be subjected to undue humiliation, distress, fear,

worry, anxiety, and other emotional losses and damages in addition to economic losses.

44.     This Court has subject matter jurisdiction. That includes the fact that Colorado state district courts have concurrent jurisdiction with the federal district court in Colorado over federal claims under the ADA and Title VII of the Civil Rights Act. This Court has jurisdiction under the Americans with Disabilities Act ("ADA"), specifically 42 U.S.C. §12133.

45.     This Court has personal jurisdiction over Defendant Balfour Senior Living. Defendant has done business and acted in Colorado and is subject to service of process and a civil action in Colorado.

46.     Venue is proper in this Court. Balfour Senior Living did operate and continues to operate and did employ Carthon in the City & County of Denver. Carthon worked for Defendant in Denver. CRCP 98.

47.     This action involves claims for damages that are greater than $100,000. CRCP 16.1 does not apply.

48.     This action, in part, seeks to redress the deprivation of rights secured to the Plaintiff by the Americans with Disabilities Act ("ADA") of 1990 (*see* 42 U.S.C. §§12101 *et seq*.), as amended (including by the "ADAAA" of 2008), and the Colorado law adopting provisions of the ADA.

**FIRST CLAIM FOR RELIEF**

(discrimination under the ADA)

49.     The above allegations are incorporated.

50.     To establish a *prima facie* case for discrimination under the ADA, a claimant must establish that: "(1) he is a disabled person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential

functions of the job held or desired; and (3) the employer discriminated against him because of the disability." *Taylor v. Pepsi-Cola*, 196 F.3d 1109 (10th Cir. 1999). Those elements are satisfied by the facts.

51.  42 U.S. Code §12102 defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

52.  Balfour Senior Living was obligated and had a duty to reasonably accommodate Carthon and his visual impairment disability. Balfour Senior Living reasonably should have done so promptly and effectively.

53.  Carthon was and is a qualified individual with a disability under the principles of the federal and state ADA.

54.  Plaintiff also had a record of such an impairment and that was known by Defendant. Additionally, Defendant regarded Plaintiff as having such a disability or impairment, including what was shown by its actions in attempting to address Carthon's visual impairment, although its efforts were inadequate.

55.  Balfour Senior Living had the capacity or practical ability to reasonably accommodate Carthon without undue hardship.

56.  Carthon requested reasonable accommodation from Balfour Senior Living, including reasonably available visual aids to effectively facilitate his prompt completion of about 20 on-line classes at work that Balfour Senior Living asserted were mandatory.

57.  Carthon reasonably needed the accommodation.

58. Carthon had reasonably relied upon the promises and his right to accommodation, including expected compensation and the benefits and progress to flow from his career as a cook or chef.

59. Balfour Senior Living violated its promises and duties to Carthon, including its own declared EEO policy.

60. Balfour Senior Living engaged in or allowed delay, obstruction, failure, and neglect. It failed to comply with its obligations to Carthon of good faith and fair dealing. Those actions and omissions resulted in adverse employment action against Carthon, including the humiliating transfer of him to a maintenance job and the loss of his expected career as a cook or chef at Balfour at Riverpoint Park.

61. Balfour Senior Living discriminated against Carthon because of his disability and his participation in the protected activity of demanding and insisting upon accommodation. The employer violated 42 USC Section 12112.

62. The adverse employment action constituted a discriminatory act since "[t]he discriminatory act must be in regard to, or with respect to, the terms or conditions of employment." *Exby-Stolley v. Board of County Commissioners*, 906 F.3d 909 (10th Cir. 2018).

63. The proximity or logical connection between the protected activity, *i.e.,* requests for accommodation, and the adverse action are sufficient to establish this element of a *prima facie* claim. "[A] plaintiff may rely on temporal proximity … if the [action] is very closely connected in time to the protected activity." *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1171 (10th Cir. 2006).

64. Balfour Senior Living violated the ADA, both state and federal, and intentionally discriminated against Carthon. Balfour Senior Living is liable to Carthon for discrimination.

65. As a direct, natural, and proximate result of Balfour Senior Living's discrimination, Carthon incurred and suffered harms, losses, damages and impairments, and he has the need for equitable relief for loss of back pay and front pay, and he has suffered other economic damages and non-economic damages for his emotional distress, humiliation, fear, worry, anxiety, diminished confidence, and mental anguish.

66. Without limitation, Plaintiff Carthon has suffered specific lost earnings, loss of capacity for earnings, and diminished financial and personal opportunities.

67. Plaintiff has suffered economic and non-economic damages in amounts that will be determined in this action.

68. Plaintiff Carthon is entitled to recover and Balfour Senior Living is liable for back pay, front pay (with reinstatement being an impractical remedy), other economic losses and damages, and non-economic and compensatory damages. Plaintiff is entitled to all relief permitted under the ADA, 42 U.S.C. §12117(a), including equitable relief. And, see 42 USC Section 1981A.

69. Balfour Senior Living acted or engaged in its conduct and omissions willfully, intentionally, maliciously, or with reckless disregard or indifference for the rights, interests, feelings, and needs of Carthon. Carthon is entitled to recover reasonable exemplary or punitive damages from Balfour Senior Living and Defendant is liable therefor. Defendant knowingly subjected Plaintiff to humiliation, despair, and distress.

70. Carthon is entitled to recover from Defendant and Balfour Senior Living is liable for Plaintiff's attorney's fees and expenses, including costs of litigation, under the ADA. 42 U.S.C. §12205.

Plaintiff is entitled to recover from Defendant interest on all damages at the highest legal rate, but no less than 8% per annum.

72.     The filing or commencement of this civil action against Balfour Senior Living does not waive or impair Carthon's claims, both statutory and common law claims, that relate to his April 2020 charge filed with the EEOC and CCRD, which was assigned EEOC Case # 541-2020-01932 and which has not yet been the subject of a disposition or a notice of a right to sue. Plaintiff reserves the right to pursue those claims, including by their potential joinder in this action.

WHEREFORE, Plaintiff Wade M. Carthon prays for judgment in his favor and against Defendant, Balfour Senior Care, LLC, dba Balfour Senior Living, as set forth below.

## SECOND CLAIM FOR RELIEF

### (failure to accommodate)

73.     The above allegations are incorporated.

74.     In order to prevail in a "failure to accommodate" claim under the ADA "the employee must make a showing that "(1) he is disabled; (2) he is 'otherwise qualified'; and (3) he requested a plausibly reasonable accommodation" *Punt v. Kelly Services*, 862 F.3d 1040, 1050 (10th Cir. 2017).Those elements are satisfied by the facts.

75.     Carthon has been a person with a disability who was otherwise qualified. He requested reasonable accommodation from Balfour Senior Living.

76.     While it was capable of accommodating him, Balfour Senior Living, by its actions and inaction, failed or refused to reasonably accommodate Carthon and his disability in violation of the state and federal ADA.

77.     Balfour Senior Living caused Carthon to suffer and incur losses and damages as a result of its failure or refusal to provide reasonable accommodations as required.

78.  Balfour Senior Living is liable to Carthon and he should recover from Defendant and be granted complete relief.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## THIRD CLAIM FOR RELIEF

(retaliation under Title VII of the Civil Rights Act)

79.  The above allegations are incorporated.

80.  Balfour's refusal, delay and failure to effectively respond to Carthon's insistence on accommodation compounded Carthon's suffering and amounted to unlawful retaliation against Carthon for engaging in the protected activity of persisting in his need for and right to reasonable accommodation.

81.  Balfour Senior Living intended and was motivated to retaliate against Carthon because of or in relation to his persistence in seeking to be accommodated.

82.  Carthon suffered adverse employment action because that retaliation caused him to lose job opportunities and compensation.

83.  42 U.S.C §2000 e–3 (a) states that "It shall be an unlawful employment practice for an employer to discriminate against any of its employees... because he has opposed any practice made an unlawful employment practice by this subchapter."

84.  To establish a *prima facie* Title VII retaliation claim, the alleging party must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019); (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). Those elements are satisfied by the facts.

85.     Plaintiff engaged in protected opposition to discrimination, including, without limitation, seeking accommodations of his visual impairment persistently during the period of late 2018 through at least May 2019, despite the delay and denials of Balfour Senior Living.

86.     A reasonable person would justifiably believe that being refused or delayed by his employer, despite his requesting reasonable accommodations for his known disability, was and is a materially adverse action.

87.     With the temporal and logical proximity between Carthon's requests for accommodation and the adverse employment actions taken against him being related, a reasonable person would justifiably believe that there is sufficient circumstantial evidence to support a causal nexus between the protected activity and the adverse employment action taken.

88.     Defendant's retaliation was unlawful.

89.     Carthon is entitled to recover and Balfour Senior Living is liable to Carthon for all his suffering, losses and damages, with complete relief to be afforded Plaintiff.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## FOURTH CLAIM FOR RELIEF

(breach of contract)

90.     The above allegations are incorporated.

91.     In the contract of employment, Balfour Senior Living became obligated to Carthon under express and implied obligations of good faith and fair dealing.

92.     Defendant also assured Carthon of reasonable accommodation, but then it stubbornly ignored or neglected his concerns, miscommunicated with him, delayed him and put him off, and failed to effectively and promptly provide the accommodation that was reasonably needed by Carthon for his disability and his expected progress as a cook or chef and also in his stability in employment in general.

93.     Balfour Senior Living did not perform in the relationship by honoring the obligation to act in good faith and fairly toward Carthon. That included unfairly delaying interacting with Carthon over the effective visual aid and not providing it as needed; threatening Carthon with non-payment of his bonus and raise over completing the related classes and then withholding that performance from him altogether; unfairly subjecting Carthon to a later change in its policy as if the bonus, raise and promotions that it promised to him after about 90 days could now not be given to him because the employer's supposed *new* "policy" was to later effectuate such benefits and advances only after a longer period of employment; arbitrarily claiming that its delay and failure to accommodate his disability were somehow a mere "miscommunication;" barring his VR assistant from needed access, such as to the kitchen office, so that Carthon was denied a chance to benefit from his more effective help; attempting to provide Carthon with a less

useful visual aid or process; and financially pushing Carthon so he had no choice but to accept the less desirable position, lower status and inferior opportunities of maintenance work at Riverfront Park.

94. From about the Spring of 2019 through early December 2019, Balfour Senior Living also adopted an attitude of resentment and distrust against Carthon. The employer used his transfer to maintenance to make him more vulnerable to arbitrary employment action. The employer looked for reasons to suspect Carthon of misconduct and criticize him. The employer sought an excuse or pretext to get rid of him. Balfour Senior Living failed to perform in the employment relationship in good faith and fairly.

95. Balfour Senior Living wrongfully, unfairly, and in bad faith fired Carthon on about December 6, 2019, in breach of its contractual obligations to him, including by adopting a pretext that Carthon had been supposedly "smoking" on the nursing home premises. The employer insisted that such a supposed infraction should be seen and used as a rationale for firing Carthon.

96. As a result of Balfour Senior Living's breach of its employment contract, including the breach of its obligations of good faith and fair dealing, Carton suffered losses and damages as above described as well as loss of his employment altogether with consequential economic and reasonably contemplated non-economic damages.

97.     Balfour Senior Living is liable therefor and Carthon is entitled to recover from
        Defendant for all his losses and damages and complete relief in this action.

WHEREFORE, Plaintiff prays for judgment as set forth below.


**FIFTH CLAIM FOR RELIEF**

(wrongful retaliation over Carthon's potential workers' compensation rights)

98.     The above allegations are incorporated.

99.     While working in maintenance and doing repair and janitorial duties for Balfour
        Senior Living, and on about the evening of November 26, 2019, Carthon fell in
        the course and scope of his job.

100.    Carthon sustained injuries to his shoulder, neck, and back and related bodily areas
        because of that fall at work.

101.    Carthon's disability discrimination charges, as above-described, were then
        pending and that fact was at least generally known to his supervisor and the
        general manager.

102.    Carthon made his supervisor and the general manager of Balfour Senior Living
        aware of his fall and injuries.

103.    Carthon returned to the site of work while reasonably expecting to be seeing a
        health care provider soon for his injuries and to be expeditiously directed to a
        doctor or hospital for needed care.

104.    After Carthon made his employer aware of his injuries, Carthon was ordered to work by Balfour Senior Living's representatives.

105.    Balfour Senior Living acted with unfair distrust and skepticism toward Carthon, and that behavior indicated the employer's bad faith. The employer's representatives subjected Carthon to unfair and fearful encounters over his injuries.

106.    Carthon was entitled to prompt workers' compensation ("WC") responses and expeditious access to coverage, health care and potential benefits.

107.    That likelihood was known by or reasonably should have been anticipated by his supervisor and the general manager.

108.    Balfour Senior Living had a duty, expressed in and implied by state law, and it was matter of Colorado public policy that Balfour Senior Living was obligated, to respect, honor, allow for, and facilitate Carthon's rights, needs, and interest in expedited WC coverage and benefits. That include privileges, access to care, and potential care without hindrance, interference, resentment, resistance, delay or retaliation.

109.    Balfour Senior Living violated or dishonored that duty by taking adverse employment action against Carthon, including harboring suspicions, criticism, resistance and doubt toward or about Carthon and his needs.

110.    Despite Carthon's rights and need for WC care and benefits under Colorado law
        and Balfour Senior Living's duties thereunder, the general manager, acting in
        conjunction with the supervisor and while acting for Balfour Senior Living,
        developed or adopted antagonism towards Carthon and accused Carthon of
        "smoking" on the premises. That was asserted as if such accused conduct should
        be seen as a violation of a material rule. Balfour Senior Living abruptly suspended
        Carthon from work and ordered him to stay away from the business and the
        building.

111.    While that suspension of his job continued to the detriment of Carthon, Balfour
        Senior Living fired Carthon on or about December 6, 2019. The firing was
        communicated to Carthon over the phone without any stated basis or justification,
        except to suggest that the adopted pretext was supposedly sustained.

112.    Balfour Senior Living, starting about 11/27/2019, acted to deprive Carthon of his
        employment so as to result in delay, obstruction, and frustration for Carthon in his
        needed rights and access to prompt care or benefits to which he was entitled under
        WC law and policy.

113.    Balfour Senior Living acted in bad faith and in retaliation against Carthon by
        wrongfully firing him over or because of his right or potential to WC coverage,
        care and benefits, including its adoption of a pretext that Carthon had smoked on
        the premises.

114.    Balfour Senior Living had no basis and there was in fact no basis or justification for the termination of Carthon's employment. The employer supposedly relied on its arbitrarily asserted pretext of "smoking" to make it appear that Carthon violated a rule that somehow could warrant his termination.

115.    At the same time, the employer was aware or had reason to know that some of its other employees had smoked at times on and near the premises, but they had suffered no such major adverse employment consequences as a result.

116.    By its retaliatory action, Balfour Senior Living tortiously fired Carthon. Even if the employment might be considered or deemed as generally "at will" for some purposes, such termination is still legally considered an exception to any presumption against a claim for wrongful termination.

117.    As a natural and proximate result of the retaliatory firing, Carthon suffered the loss of his employment, security, earnings, opportunities, and potential and consequential economic damages. He also suffered emotional distress, humiliation, anxiety, fear, worry, and related non-economic damages.

118.    Balfour Senior Living is liable to Carthon therefor and Carthon is entitled to recover from Defendant for all of his damages and complete relief as determined in this action.

WHERFORE, Plaintiff, Wade M. Carthon prays for judgment in his favor and against Defendant, Balfour Senior Care, LLC, dba Balfour Senior Living, as follows:

A.  Damages for economic suffering and losses for:

    (1) Back pay;

    (2) Front pay;

    (3) Other economic losses;

    (4) Anticipated costs and charges for retraining or rehabilitation in restorative or other employment;

    (5) The value of past and anticipated losses of opportunities and the loss of valuable time devoted to his recovery;

    (6) Incidental, consequential and out of pocket expenses, and amounts for the reasonable value of Carthon's time for recovering or pursuing other opportunities; and

    (7) loss of earnings and earning capacity and diminished financial opportunities due to the adverse action, termination, and emotional suffering, all in amounts to be determined.

B.  Compensatory damages for all non-economic suffering and losses for past and future:

    (1)    loss of enjoyment of life, humiliation and degradation;

    (2)    diminished capacity for family, domestic, social, and recreational activities due to distress;

    (3)     stress, fear, aggravation, worry, anxiety, embarrassment, and emotional

            disturbance; and

    (4)     mental anguish and suffering.

C.  Punitive or exemplary damages;

D.  Interest on damages at 8% per annum, compounded annually;

E.  Attorney's fees for the reasonable value of all legal services;

F.  Costs and expenses for pursuing relief and the recovery of damages, including fees and expenses for review, reports and testimony by experts, witness fees, transportation expenses for witnesses and experts, deposition expenses, expenses for medical and care records, and depositions; and

G.  Such other relief as is just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by a jury on all issues.

Submitted on this 5th day of December, 2020.

*Duly signed original on file at the offices of*
*BOESEN LAW, LLC*

_____
Dennis P. Walker,
*Attorney for the Plaintiff*

**Plaintiff's Address**:
Mr. Wade M. Carthon
2549 Franklin Street
Denver, CO 80205

| | |
|---|---|
| **DISTRICT COURT,**<br>**CITY & COUNTY OF DENVER,**<br>**COLORADO**<br><br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: 303-606-80202<br>_____<br><br>**WADE M. CARTHON,**<br><br><br>Plaintiff,<br><br><br>vs.<br><br><br><br>**BALFOUR SENIOR CARE, LLC,**<br><br>a Delaware limited liability company,<br><br>dba "Balfour Senior Living,"<br><br>and aka BSL Center, Balfour at Riverfront Park, and Balfour Care,<br><br><br>Defendant. | DATE FILED: December 5, 2020 12:47 AM<br>FILING ID: 97E7A85F9136B<br>CASE NUMBER: 2020CV34139<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>▲   **COURT USE ONLY**   ▲ |
| Attorney for:   Plaintiff<br>Name:            Dennis P. Walker<br>Address:         BOESEN LAW, LLC<br>                 4100 East Mississippi Avenue<br>                 19th Floor<br>                 Denver, Colorado 80246<br>Phone Number: (303) 999-9999<br>E-mail:          dwalker@boesenlaw.com<br>Atty. Reg.#:     7658 | Case Number:<br><br><br>Division:         Courtroom: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE-NAMED DEFENDANT:**        **BELFOUR SENIOR CARE, LLC**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of

Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated:  December 5, 2020

*/s/ Dennis P. Walker*
Plaintiff's Attorney
4100 E. Mississippi Ave., Ste. 1900
Denver, CO 80246
Telephone: 303-999-9999
_____
**Plaintiff's Phone Number c/o Boesen Law, LLC**

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.