IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00007-MEH

WADE M. CARTHON,

    Plaintiff,

v.

BALFOUR SENIOR CARE, LLC d/b/a Balfour Senior Living,
a/k/a BSL Center, Balfour at Riverfront Park, and Balfour Care,

    Defendant.

_____

## ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Wade M. Carthon ("Plaintiff") asserts five claims against Defendant Balfour Senior Care, LLC[1] ("Defendant") concerning his previous employment with Defendant. ECF 40. Plaintiff's claims are for disability discrimination under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, failure to accommodate under the ADA, retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, breach of contract, and wrongful retaliation regarding potential workers' compensation rights. *Id.* Defendant filed the present motion to dismiss ("Motion"), seeking dismissal of only the fourth claim for breach of

---

[1] The first footnote in Defendant's reply suggests that the case caption lists the incorrect "also known as" names for Defendant. As this issue is not material to the pending Motion, the Court does not address this argument here.

contract.² ECF 17.  The Motion is fully briefed, and the Court heard oral argument on April 28, 2021.  As set forth below, the Motion is denied.

## FACTUAL BACKGROUND

The following are material, factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Plaintiff in his Amended Complaint, which concern only the breach of contract claim and which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff began an employment relationship with Defendant sometime in August 2018. Am. Compl. ¶ 5.  Defendant hired Plaintiff to work as a cook in its kitchen at Riverfront Park. *Id.* ¶ 9.  In trying to induce Plaintiff to accept the job, Defendant assured Plaintiff "that he would have good opportunities to advance and succeed in positions of cook, chef, head chef, sous chef, and executive chef." *Id.* ¶ 10.  Additionally, Defendant promised Plaintiff "a sign-on bonus of $1,500 and a pay raise within the first 90 days of his employment, along with further raises, bonuses, and promotions, provided [Plaintiff] would satisfactorily perform." *Id.* ¶ 11.  Defendant also promised, both directly and indirectly, to treat Plaintiff honestly and fairly. *Id.* ¶¶ 12, 16.  Based on these assurances, Plaintiff agreed to work with Defendant. *Id.* ¶ 17.  Plaintiff satisfactorily performed his duties. *Id.*

Defendant required Plaintiff to take certain classes as part of his job, including safety training. *Id.* ¶ 20.  Due to his visual impairment disability, Plaintiff requested accommodations to

---

² On March 25, 2021, Plaintiff filed an unopposed motion to amend his Complaint. ECF 34. The Court granted that motion and gave Plaintiff leave to amend. ECF 36.  The only change Plaintiff made in the operative Amended Complaint was a single allegation for punitive damages as to the fifth claim for relief.  As the pending Motion only concerns the fourth claim, for the sake of judicial efficiency, the Court did not deny the Motion as moot as is normally done when an amended pleading is filed.  Instead, the Court treats the Motion as applying to the Amended Complaint.

2

assist with taking these classes, such as installing computer-reading visual aids. *Id.* Plaintiff alleges that Defendant delayed or failed in accommodating his disability. *Id.* ¶ 23. Defendant's failure to accommodate meant that Plaintiff "could not expeditiously complete the . . . classes at work as required." *Id.* ¶ 26. Because he did not complete the classes, Defendant told Plaintiff that it "would withhold his promised raise, bonus, and pending promotions until he" finished the classes. *Id.* ¶ 27. Around the middle of 2019, Defendant compelled Plaintiff to accept a transfer to a maintenance job by stating that "he would only be able to get the higher pay he deserved, expected, and needed if he were to transfer out of the kitchen." *Id.* ¶¶ 37–38. Plaintiff continued to work in the maintenance job until November 27, 2019, when Plaintiff was suspended for allegedly smoking on the premises. *Id.* ¶ 8, 95, 110. On December 6, 2019, Defendant terminated Plaintiff's employment based on the alleged smoking. *Id.* ¶ 8, 111.

Under the Fourth Claim for Relief, Plaintiff alleges that Defendant became obligated to him "under express and implied obligations of good faith and fair dealing." *Id.* ¶ 91. Defendant had assured Plaintiff of a reasonable accommodation but neglected his concerns and ultimately failed to promptly provide the accommodation. *Id.* ¶ 92. Further, Defendant did not honor its promise to treat Plaintiff fairly and to act in good faith. *Id.* ¶ 93. Plaintiff lists the following ways as examples of this:

> That included unfairly delaying interacting with [Plaintiff] over the effective visual aid and not providing it as needed; threatening [Plaintiff] with non-payment of his bonus and raise over completing the related classes and then withholding that performance from him altogether; unfairly subjecting [Plaintiff] to a later change in its policy as if the bonus, raise and promotions that it promised to him after about 90 days could now not be given to him because the employer's supposed new "policy" was to later effectuate such benefits and advances only after a longer period of employment; arbitrarily claiming that its delay and failure to accommodate his disability were somehow a mere "miscommunication;" barring his VR assistant from needed access, such as to the kitchen office, so that [Plaintiff] was denied a chance to benefit from his more effective help; attempting to provide [Plaintiff] with a less useful visual aid or process; and financially pushing [Plaintiff]

3

> so he had no choice but to accept the less desirable position, lower status and inferior opportunities of maintenance work at Riverfront Park.

*Id.*

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the

plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## **ANALYSIS**

As mentioned earlier, Defendant only moves to dismiss Plaintiff's breach of contract claim. In so moving, Defendant makes three arguments for dismissal. First, any allegation that Defendant failed to accommodate cannot support a breach of contract claim under Colorado law. Mot. at 5. Second, Colorado law does not provide for a breach of the implied covenant of good faith and fair dealing in the employment context. *Id.* at 6–7. Third, Plaintiff failed to plausibly allege any breach of the express covenant of good faith and fair dealing. *Id.* at 7–8. Plaintiff responds that his allegations plausibly allege the existence of an employment contract, Resp. at 5–6, and that the implied and express promises made by Defendant accompanied that contract, *id.* at 7-8. Plaintiff also argues that he "has the right to relief under the theory of promissory estoppel." *Id.* at 11. The Court first will address the breach of contract issue and then proceed to the promissory estoppel argument.

5

## I. Breach of Contract

Under Colorado law, an employee who is hired "for an indefinite period is an 'at will employee' whose employment may be terminated by either party without cause or notice, and whose termination of employment does not give rise to a cause of action." *Orback v. Hewlett-Packard Co.*, 97 F.3d 429, 432 (10th Cir. 1996) (citing *Cont'l Airlines v. Keenan*, 731 P.2d 708, 711 (Colo. 1987)). This presumption of at-will employment can be rebutted by the employee if he can prove that "an explicit term of the employment contract restricts the employer's right to discharge (such as an undertaking to discharge only for cause), or that an employer's policy statement restricting such right has been properly accepted as part of that contract or relied upon by the employee under circumstances giving rise to promissory estoppel." *Davis v. Post Tension of Nevada*, No. 05-cv-00805-WYD-PAC, 2006 WL 1801451, at *5 (D. Colo. June 27, 2006) (quoting *Schur v. Storage Tech. Corp.*, 878 P.2d 51, 53 (Colo. App. 1994)). Additionally, a plaintiff may overcome the presumption by establishing that the employer "created and subsequently breached an implied employment contract." *Fuller v. Old Dominion Freight Line, Inc.*, No. 17-cv-00080-RBJ, 2017 WL 2537107, at *3 (D. Colo. June 12, 2017). "However, absent 'special consideration' or 'an express stipulation as to the duration of employment,' a contract for permanent employment is no more than an indefinite, general hiring terminable at the will of either party." *Medina v. Werner Enters., Inc.*, No. 14-cv-01188-CMA-KMT, 2015 WL 720979, at *7 (D. Colo. Feb. 18, 2015).

Here, Plaintiff's Amended Complaint is devoid of any allegation regarding his hiring for a specified period. Therefore, the presumption of at-will employment applies, and it is Plaintiff's burden to rebut it. To do so, Plaintiff cites a previous case from this Court in which the Court noted that Colorado courts have "specifically referred to an at-will employment relationship as an

6

'employment contract.'" *Cejka v. Vectrus Sys. Corp.*, No. 15-cv-02418-MEH, 2018 WL 4901147, at *3 (D. Colo. Oct. 9, 2018), *aff'd*, 823 F. App'x 591 (10th Cir. 2020). In other words, Plaintiff argues that he has plausibly alleged facts that show Defendant breached an "employment contract." Yet, Plaintiff's citation to *Cejka* is inapposite. There, the Court reviewed Colorado caselaw to determine that a claim for wrongful discharge in violation of public policy can sound in tort "even in the context of an 'employment contract.'" *Id.* (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992)). While the Colorado Supreme Court in *Martin Marietta* did use the phrase "at-will employment contract," it did so in the specific context of a wrongful discharge in violation of public policy claim. 823 P.2d at 109. An employee may rebut the presumption of at-will employment by proving that "his discharge violated Colorado's public policy." *Schur*, 878 P.2d at 53–54. But that is not what Plaintiff argues here. Therefore, the *Cejka* and *Martin Marietta* line of cases are inapplicable here.[3] Even if they did apply, the Court does not read the single phrase in *Martin Marietta* as somehow implying that an employment contract automatically arises from an at-will employment relationship without more.

Plaintiff's Amended Complaint also lacks any allegation regarding an explicit term on restricting Defendant's ability to discharge. Instead, Plaintiff focuses heavily on the alleged implied and express promises made by Defendant. For instance, Defendant promised Plaintiff that he would have opportunities for promotion, a sign-on bonus and pay raise within the first ninety days of employment, and that he would be treated honestly and fairly and with a commitment of

---

[3] Nor could Plaintiff make a wrongful discharge in violation of public policy argument since the public policy at issue in this case, namely the protection of employees with disabilities, "is embodied in a federal anti-discrimination scheme containing its own remedial scheme." *Medina*, 2015 WL 720979, at *7 (citing *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1087 (D. Colo. 2012)).

good faith and fair dealing.[4] Am. Compl. ¶¶ 10–12. Accepting these promises as true as the Court must at this stage, there is a dearth of allegation as to how these restrictions limited Defendant's ability to discharge Plaintiff's employment. In fact, with two exceptions, the vague promises made here are of the exact kind that cannot be used as evidence of an implied contract. *Fuller*, 2017 WL 2537107, at *3 (finding statements such as "that [the employer] would treat [the employee] in good faith and fairly" as vague and indefinite assurances); *Meeker v. Life Care Ctrs. of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 WL 5728787, at *2 (D. Colo. Sept. 30, 2015) (finding statements such as employees have "opportunities through education and advancement to reach their maximum potential" as vague).

The only two promises that possibly raise to the level of an implied contract are the sign-on bonus and the promise of a raise within ninety days of employment. To succeed on an implied contract theory, Defendant must have "intended to make an offer to the employee: '[T]hat is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain.'" *Orback v. Hewlett-Packard Co.*, 909 F. Supp. 804, 808 (D. Colo. 1995), *aff'd*, 97 F.3d 429 (10th Cir. 1996) (quotation omitted). The Amended Complaint states that Plaintiff relied on Defendant's assurances to take the job with Defendant. Am. Compl. ¶ 15. Plaintiff alleges that "Defendant did not effectuate the raise for [him] as a cook or pay him the promised sign-on bonus." *Id.* ¶ 27. At this stage, these allegations are sufficient to overcome the presumption of at-will employment in showing that there was an implied contract formed and

---

[4] Additionally, Plaintiff appears to suggest that the promise of accommodation was an implied term of the employment contract. Am. Compl. ¶ 15. Yet, that cannot be the basis for finding an implied contract since Defendant was obligated to abide by the ADA, and "compliance with [that] statute[ ] cannot be an implied term in an employment contract." *Ferrera v. Bd. of Gadsden Indep. Sch. Dist.*, 2013 WL 12200525, at *3 (D.N.M. Aug. 8, 2013) (citation omitted).

subsequently breached.[5]  The sign-on bonus allegation is specific and detailed.  The pay raise allegation, though lacking some specificity, is not the same type of vague allegation as, for example, the promise to "have good opportunities to advance".  *Id.* ¶ 10.  Defendant promised a pay raise within ninety days, and, based on the allegations, did not provide that raise.  Together, these allegations sufficiently allege the formation and breach of an implied contract.

To be clear, these are the only two promises which are specific enough to constitute the formation of an implied employment contract.  As such, the employment contract is based solely on these promises.  Consequently, to the extent Plaintiff incorporates a claim for breach of express covenants, the claim is based solely on the promises of a sign-on bonus and a raise within ninety days.  *See Decker v. Browning-Ferris Indus. of Colo., Inc.*, 931 P.2d 436, 443 (Colo. 1997) (finding that there needs to be an underlying contract for which the express covenants to apply).  Additionally, although the Court has found Plaintiff plausibly alleged an implied contract, the Court notes that Plaintiff cannot allege an independent claim for breach of the implied covenant of good faith and fair dealing in the employment context.  *Gloston v. ITT Federal Servs. Intern. Corp*, 2007 WL 1830486, at *2 (D. Colo. June 21, 2007) ("[S]everal Colorado appellate courts and federal courts applying Colorado law have held that there is no cause of action under Colorado law for breach of the implied covenant of good faith and fair dealing in the employment context.") (citing cases).  Therefore, the Court finds that no such independent claim exists here.

---

[5] The Court understands that Defendant in its Motion and at oral argument raised issues pertaining to language in the purported employee handbook suggesting that no promise made by Defendant can be construed as making an employment contract.  However, the Amended Complaint does not attach the handbook as an exhibit, and it is not even mentioned once in the factual allegations.  Considering such extrinsic evidence at this time would not be proper.  *See Denver Health and Hosp. Auth. V. Beverage Distribs. Co., LLC*, 546 F. App'x 742, 746 n.1 (10th Cir. 2013) ("Although the district court generally may not look beyond the pleadings when deciding a motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim'" and authenticity is not disputed.) (citation omitted).

As a final note on this claim, the Court emphasizes that its finding of an implied contract should be viewed only in light of the requirement to accept all well-pleaded facts as true in the Amended Complaint. That is, the Court has found that Plaintiff *plausibly alleged* a claim for breach of contract on the theory of an implied contract being formed. The consideration of evidence on a motion for summary judgment may or may not alter the conclusion reached today, and the Court expects to revisit this issue at a future time.

## II.  Promissory Estoppel

As an alternative theory to the existence of a contract, Plaintiff argues in his response brief, for the first time, that Defendant is liable under the theory of promissory estoppel. Resp. at 11–12. This issue may be moot since the Court has found an implied contract. However, "[i]t is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Salim v. Holder*, No. 13-cv-03175-RM-CBS, 2015 WL 13849468, at *14 (D. Colo. Mar. 4, 2015) (quoting *Boyer v. Bd. of Cty. Comm'rs of Cty. of Johnson Cty.*, 922 F. Supp. 476, 482 (D. Kan. 1996)), *report and recommendation adopted sub nom. Salim v. Sessions*, No. 13-cv-03175-RM-CBS, 2017 WL 11487131 (D. Colo. May 2, 2017).

This is true even in the context of pro se litigants who should be afforded more liberality than lawyered parties (as is the case here). *See Marxmiller v. Bd. of Cty. Comm'rs of Boulder Cty.*, No. 11-cv-02579-WYD-BNB, 2012 WL 4049840, at *2 n.1 (D. Colo. July 10, 2012), *report and recommendation adopted*, No. 11-CV-02579-WYD-BNB, 2012 WL 4049836 (D. Colo. Sept. 13, 2012). Accordingly, the Court will not view the Amended Complaint as raising a claim for promissory estoppel. Plaintiff will need to move for leave to amend should he wish to add this claim.

**CONCLUSION**

For the reasons stated herein, the Motion [filed February 1, 2021; ECF 17] is **denied.**

Entered this 29th day of April, 2021, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge